UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORINDA SEINIDA RICHARDS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:22-cv-01079-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 13).

　　　Plaintiff presents the following issues:

1. Whether the ALJ's finding that Plaintiff could perform a range of light work is based on substantial evidence;

2. Whether the ALJ's rejection of Dr. Ignacio's opinion is error;

3. Whether the ALJ erred when she failed to give any reasons for rejecting limitations opined by the state agency that she did not accept; and

4. Whether the ALJ gave clear and convincing reasons for rejecting Plaintiff's testimony.

(ECF No. 19, p. 11) (capitalization altered).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows:

**I.   ANALYSIS**

**A.   ALJ's Finding that Plaintiff Could Perform Light Work**

Plaintiff argues that the ALJ erred in finding her capable of performing light work in assessing her residual functional capacity. (ECF No. 19, pp. 11-12). Specifically, she contends that (1) the ALJ should have included "walking limitations" in the RFC based on her right knee impairment, although she does not specify what specific limitations should have been included; and (2) the shoulder limitations in the RFC were based on the ALJ's lay interpretation of the medical evidence because no medical professional reviewed records relevant to her shoulder impairment. Defendant counters that (1) substantial evidence, including examination records and medical opinion, supports the ALJ's decision to omit walking limitations in the RFC; and (2) contrary to Plaintiff's contention, a medical professional did review records relevant to Plaintiff's shoulder impairments. (ECF No. 21, pp. 6-7).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such

1 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2 *Richardson*, 402 U.S. at 401 (internal citation omitted).

3     The ALJ formulated the following RFC in this case:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she is able to climb ramps and stairs occasionally. She cannot climb ropes, ladders, or scaffolds. She cannot balance as defined in the SCO. She is able to stoop without limitation. She can kneel, crouch, and crawl occasionally. The claimant is able to reach overhead occasionally with her right dominant, upper extremity and frequently with her left upper extremity. She is able to reach frequently in all other directions, bilaterally. The claimant is able to perform simple tasks and to make simple workplace decisions. She is able to have frequent interaction with supervisors and co-workers, but only occasional interaction with the public.

(A.R. 21).

    Plaintiff first argues that this RFC is deficient for failing to include walking limitations based on her right knee impairment, generally asserting that the ALJ ignored relevant evidence. However, the ALJ considered the medical record and cited substantial evidence to support the RFC. Among other things, the ALJ noted that, while Plaintiff reported knee pain, her condition generally improved and, "upon physical examination, [she] had normal gait with the use of an assistive device to ambulate" and while an examination of her knee "revealed tenderness to palpation," "her sensation was intact, she had full range of motion and her strength was intact." (A.R. 23). Additionally, the ALJ partially relied on the opinions of two state medical sources, who both found Plaintiff capable of standing and/or walking 6 hours in an 8-hour day. (A.R. 24-25, 129, 147). The Court recognizes that Plaintiff advocates for a different interpretation of the record, arguing that her symptoms were more severe than the ALJ found. But such argument, at most, presents another "rational interpretation" of the record, which means that "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

    Plaintiff next argues that the ALJ erred in formulating limitations regarding Plaintiff's shoulder impairments because "[t]he state agency physicians did not see evidence of Plaintiff's shoulder impairment in Exhibit 12F, so this finding is based on the ALJ's lay interpretation of the medical evidence." (ECF No. 19, p. 14). However, the fact that no medical expert reviewed

certain records does not in itself render the ALJ's decision unsupported by substantial evidence. *See Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished) ("ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination."). Regardless, as Defendant points out, one of the state agency physicians, Dr. Fast, did indeed review Exhibit 12F, which consisted of records from Stanislaus Orthopedic/Sports. (ECF No. 21, p. 7; A.R. 138, 570). Moreover, the ALJ found even greater limitations relating to Plaintiff's shoulder impairments than did the state agency doctors. Importantly, Plaintiff fails to explain what further limitations would have been warranted so as to demonstrate error. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting challenge to RFC determination where the claimant did "not detail what other physical limitations follow from the evidence of his knee and shoulder injuries, besides the limitations already listed in the RFC").

For the reasons given above, the Court finds the ALJ's RFC assessment regarding Plaintiff's knee and shoulder impairments to be supported by substantial evidence.

**B.     Dr. Ignacio's Opinion**

Plaintiff next argues that the ALJ erred in deeming unpersuasive the opinion of Dr. Ignacio regarding Plaintiff's mental impairments. (ECF No. 19, p. 17). Specifically, Plaintiff contends that the ALJ did not properly address the supportability and consistency factors. Defendant argues that the ALJ correctly addressed these factors. (ECF No. 21, p. 8).

Because Plaintiff applied for benefits in 2019, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 118). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With these standards in mind, the Court turns to the opinion of Dr. Ignacio, who treated Plaintiff for mental health issues. Dr. Ignacio prepared a one-page form, opining, among other things, that Plaintiff had a poor ability to deal with stress, carry out simple one-or-two job instructions, and relate to coworkers. The form listed no reasons to support these assessments. (A.R. 683). Dr. Ignacio also opined that Plaintiff could not "hold on to substantial gainful employment."

In deeming the opinion "not persuasive," the ALJ stated as follows:

> The undersigned finds the opinion of the treating source statement of Elmer Ignacio, M.D., not persuasive. Dr. Ignacio's reasoning for making such limited finding is not explained at all and the opinion is not even consistent with his own treatment records that show improvement with medications (See e.g. C7F and C10F). To illustrate, virtually every one of his treatment notes state the claimant has no medication side effects, she is able to attend to self and activities of daily living, not helpless nor hopeless ( e.g. 10F/4, 14F/4, 6). In addition, the claimant reports less depression and not so frequent PTSD symptoms (10F/3). Moreover, the objective evidence shows the claimant is doing alright and she reports positive responses to medications (10F/2). The claimant's main complaint is sleep disturbance (10F/4, 14F/3). Nonetheless, the record shows the claimant's sleep quality and pattern improved with taking melatonin; no recurrence of severe depression or frequent PTSD symptoms (14F/2). She reported to her primary care physician that she does not have anxiety, nervousness, depression sadness, or stress in July 2019, and she was evaluated by the primary care physician as psychiatrically normal (4F/8). Even more, primary care physician evaluations show normal presentations throughout (15F, 3F, 11F). Therefore, the undersigned finds the statement that the claimant unable to maintain substantial gainful employment is neither valuable nor persuasive under 20 CFR 416.920b.

(A.R. 25).

The Court concludes that this explanation complies with the standards discussed above. As to supportability, the ALJ properly discounted the opinion for failing to explain the relevant medical evidence supporting the assessments. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."). As the ALJ noted, Dr. Ignacio's own notes failed to show that Plaintiff experienced limitations to the degree opined; rather, they generally showed positive results to treatment. (A.R. 25). Plaintiff contests this finding, asserting "that a patient's improvement while taking psychiatric medications is not evidence that the patient can function in the workplace." (ECF No. 19, p. 18). True, improvement does not *per se* mean a person is capable of work, but the improvement noted here was sufficient to discount the extreme limitations opined by Dr. Ignacio, including that Plaintiff was incapable of working.

As to consistency, the ALJ reasonably concluded that the opined limitations were inconsistent with other record evidence, including that Plaintiff's sleeping improved with taking

melatonin, that she had normal presentations in the record, and that she self-reported not having mental health symptoms. Plaintiff takes issue with this conclusion, arguing that (1) one of the cited records was three months outside the relevant period and is thus of limited relevance and (2) primary care records cannot "constitute clinical evidence." (ECF No. 19, p. 20). However, the Court agrees with Defendant that (1) even assuming that one record was of less relevance, there were multiple others within the relevant period supporting the ALJ's conclusion (*see* AR 352, 530, 644 (denying mental health symptoms and reporting normal psychiatric exam)) and (2) the consistency factor cannot be limited to viewing evidence from only doctors with a certain health specialty, as the relevant regulation, 20 C.F.R. § 416.920c(c)(2), directs the ALJ to consider "evidence from other medical sources and nonmedical sources."[1] (A.R. 21, p. 10).

Accordingly, the Court does not find that the ALJ erred in evaluating Dr. Ignacio's opinion in conjunction with the supportability and consistency factors.

### C.   State Agency Physicians' Opinions

Plaintiff next argues that the ALJ erred in evaluating the opinions of state agency physicians who offered opinions as to her mental limitations. (ECF No. 19, p. 21). Specifically, she notes that the ALJ concluded that she could *frequently* interact with co-workers and the public despite finding partially persuasive the doctors' opinions that she could *occasionally* interact with others. Defendant argues that (1) the RFC did not need to specifically match the doctors' opinions and (2) any error was harmless because the jobs that the ALJ found Plaintiff capable of performing at Step 5 were rated at a people level of 8, which means that interaction with others is not significant. (ECF No. 21, p. 11).

The Court agrees that any error here was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). Importantly, even assuming that Plaintiff should have been limited to occasionally

---

[1] Plaintiff also argues that the ALJ should have considered other factors, such as the treating relationship with Dr. Ignacio. (ECF No. 19, p. 20). However, these factors only come into play when the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same." 20 C.F.R. § 416.920c(b)(3).

interacting with others rather than frequently, Plaintiff fails to articulate how this affected the ultimate nondisability determination. *Id.* at 1055. Notably, each of the jobs Plaintiff was found capable of performing—merchandise marker, routing clerk (shipping), and routing clerk (general office)—require a people level of 8, which is categorized as "not significant" in terms of interacting with others in the Dictionary of Occupational Titles (DOT). *See* DOT 209.587-034 Marker, 1991 WL 671802; DOT 222.687-022 Routing Clerk, 1991 WL 672133; DOT 222.587-038 Router, 1991 WL 672123. Rather, a people level 8 is "the lowest level of interaction with people that is necessary for jobs listed in the DOT." *Hann v. Colvin*, No. 12-CV-06234-JCS, 2014 WL 1382063, at *23 (N.D. Cal. Mar. 28, 2014) (finding harmless error where the ALJ should have limited Plaintiff to occasional contact with supervisors but where the jobs that plaintiff could perform required a people level of 8).

### D. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to give clear and convincing reasons to reject her subjective complaints, asserting that "the ALJ failed to identify the testimony she rejected and did not link it to particular parts of the record." (ECF No. 19, p. 23). Defendant argues that "the ALJ provided multiple, rational reasons for discounting Plaintiff's subjective complaints" and that Plaintiff fails to offer any developed argument as to how the ALJ's reasoning was insufficient. (ECF No. 21, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an

ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 22). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ provided a lengthy recitation of Plaintiff's subjective complaints, among other things, noting the following:

> [T]he claimant alleged that she hobbles when she walks because of her knee pain, she has undergone various treatments, and her doctor informed her there is not enough knee damage for a knee replacement. The claimant stated that she could not sleep sometimes because the pain is overwhelming. She said she gets up and cries. Moreover, she discussed that she puts ice on it every 20 minutes for 3 hours at a time and she been icing it since 2015. The claimant testified she could stand for 30 minutes, sit for 1 hour and walk around the block when she is hobbling. She said she uses a cane when she is hobbling. She stated she does not use a cane a home and at times, she carries it because she is embarrassed and she has been using the cane for a couple of years.
>
> In addition, the claimant said she does not drive because her mental health is not stable. She stated she has double vision and she sees things out of the corner of her eye. She testified she has an accident and lost her license was suspended. The claimant testified she has someone take her places or she takes the bus, but sometimes she gets lost on the bus. She said she does not like looking at people's faces. As well, the claimant discussed that she gets 3-4 hours of sleep a night and she takes naps 45 minutes to 1 hour, 5 days per week. She stated that she naps two times a day. Moreover, she said she gets confused and her sister is always with her. However, she testified that when she was working she had no trouble getting along with coworkers and supervisors, but now she has moments when she is aggravated and she snaps at people. She said she does go to the grocery store, but she does not cook and her sister does all the cooking.

(A.R. 21-22).

Contrary to Plaintiff's assertion, the ALJ sufficiently indicated which testimony was discounted and explained why. Following the ALJ's recitation of Plaintiff's complaints, the ALJ

discussed the evidence that suggested Plaintiff's symptoms were not as severe as claimed. Among other things, the ALJ noted that "the objective evidence does not support [her] allegations that she must elevate her legs," noting " no peripheral edema" in the medical evidence and that "an examination evidenced no crepitus, normal tone, no positive clinical signs, and she was stable 13F/7 and the same was noted in November 2020 (13F/10)." (A.R. 23). And as for Plaintiff's mental complaints, the ALJ discounted them because, among other things, her "behavioral therapy records suggest that her mental functioning has improved with treatment," she often reported doing alright, and "[s]he has no documented episodes of hospitalization or emergent care for mental decompensation, or acute exacerbations of her mental disorders." (A.R. 24). In short, it was reasonable for the ALJ to reject Plaintiff's complaints as unsupported by and inconsistent with the record evidence. *See See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). Accordingly, the Court concludes that the ALJ provided legally sufficient reasons for not giving full weight to Plaintiff's subjective complaints.

## II.    CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.
IT IS SO ORDERED.

Dated:   **June 9, 2023**                          /s/ Erica P. Grosjean
                                                           UNITED STATES MAGISTRATE JUDGE

10